**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-80965-CIV-ALTMAN**

**CHOON TAN**,

    *Plaintiff*,

v.

**JOHN BIRKBECK** and
**PITTSBURGH ASSOCIATES LP**,

    *Defendant*.

_____/

**ORDER GRANTING MOTION TO AMEND**

Before the Hon. Roy K. Altman:

    John Birkbeck is a scout for the Pittsburgh Pirates. *See* Response to Motion to Amend [ECF No. 16] at 4. While he was working as a scout in Florida, he got into a car accident with the Plaintiff, who sued him for negligence in state court. *See* Notice of Removal [ECF No. 1] ¶ 2. On June 19, 2020, the Defendants, Birkbeck and Pittsburgh Associates LP (Birkbeck's employer), removed this action to federal court. *Id*.

    The parties agree that, as of *that* day, this Court had diversity jurisdiction over the case because the Defendants are from Ohio and Pennsylvania, respectively, and the Plaintiff is from Florida. *See* Motion to Amend [ECF No. 8] at 6 ("Plaintiff admits that because Defendants deprived the state court of the opportunity to rule upon the Motion to Amend [Exhibit 3], diversity of citizenship existed at the time of removal."). Now, however, the Plaintiff has filed a Motion to Amend her Complaint, through which she hopes to add two non-diverse Defendants (the "non-diverse Defendants"). *See generally id.* The Defendants oppose the amendment. Because the Plaintiff should be permitted to amend her Complaint, the parties are no longer diverse, and the case must be remanded.

**THE FACTS**

The Plaintiff's state-court Complaint included negligence claims against an entity called Pittsburgh Associates of Florida, LLC ("Pittsburgh-Florida"). *See* Notice of Removal at 3. After the Plaintiff filed her Complaint, the Defendants sent her an affidavit from Marcy McGovern—an employee of Pittsburgh Associates, LP (one of the two Defendants in *this* case). In that Affidavit, Ms. McGovern attested that "John Birkbeck is not employed by Pittsburgh Associates of Florida, LLC." McGovern Aff. [ECF No. 1-3] ¶ 5. Because of that representation, the Plaintiff withdrew her claim against Pittsburgh-Florida and filed an amended complaint that dropped that entity from the case. *See* Notice of Removal ¶ 9.

Some time later, the Plaintiff realized that, under Florida law, Pittsburgh-Florida could be vicariously liable for John Birkbeck's conduct, *even* if Birkbeck was only the company's *agent*—and not its employee. *See* Mot. at 8; *cf. Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852–53 (Fla. 2003) (finding that Florida law holds principals vicariously liable for the actions of their *agents* and noting that "the existence of an agency relationship is normally one for the trier of fact to decide"). The Plaintiff also noticed that the McGovern Affidavit, which the Defendants attached to their Notice of Removal, never disclaimed any such principal-agent relationship. *See generally* McGovern Aff. Moreover, because McGovern signed the Affidavit in Pennsylvania, the Plaintiff thought it possible that McGovern simply did not know about Birkbeck's work for Pittsburgh-Florida. *See* Mot. at 3.

After coming to these two realizations, the Plaintiff—still in state court—moved to amend her complaint to rejoin Pittsburgh-Florida. *See* Mot. Ex. 4. At the same time, the Plaintiff served a supplemental interrogatory on the Defendant, in which she asked for information about the relationship between Pittsburgh-Florida, the Pirates of Florida Inc., and Pittsburgh Associates L.P.

*See* Mot. Ex. 5. Two days later—before responding to the discovery and before the state court could rule on the motion to amend—the Defendants removed the case to this Court. *See generally* Notice of Removal.

The Plaintiff now asks this Court for leave to rejoin Pittsburgh-Florida, and to add a fourth defendant, the Pirates of Florida, Inc., d/b/a the Bradenton Marauders.[1] *See generally* Mot.

## THE LAW

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). District courts "have broad discretion to decide whether, after removal, to permit joinder of a new defendant who would destroy diversity." *Hickerson v. Enter. Leasing Co. of Ga., LLC*, 2020 WL 3119069, at *4 (11th Cir. June 11, 2020); *see also Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007) ("Under the Supreme Court's decision in *Powerex*, a remand for lack of subject matter jurisdiction under § 1447(e), which arises post-removal, and a remand for lack of subject matter jurisdiction under § 1447(c), which may arise at the time of removal or post-removal, are indistinguishable for purposes of determining whether § 1447(d)'s bar to appellate review applies.").

Although the Eleventh Circuit has never propounded its own framework for removals arising under § 1447(e), the court has cited with approval the test the Fifth Circuit applied in *Hensgens v. Deer & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). *See Hickerson*, 2020 WL 3119069, at *4. Under that test, district courts should consider four factors in deciding whether to grant leave

---

[1] The Pirates of Florida, Inc., is the Florida-based minor league affiliate of the Pittsburgh Pirates. Pittsburgh-Florida is the minor league team's scouting arm. *See* Resp. at 4–5; Garland Aff. [ECF No. 16-1] ¶¶ 6–7. The Defendants concede that *both* are Florida entities—and that their joinder would destroy diversity. Resp. at 5.

3

to amend:

> (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," (2) "whether plaintiff has been dilatory in asking for amendment," (3) "whether plaintiff will be significantly injured if amendment is not allowed," and (4) "any other factors bearing on the equities."

*Id.* (quoting *Hensgens*, 833 F.2d at 1182).

In considering "the extent to which the purpose of the amendment is to defeat federal jurisdiction," this Court has said that the "fraudulent joinder doctrine . . . is not the applicable standard on the joinder of a non-diverse defendant *after* removal." *Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 799 F. Supp. 2d 1333, 1337 n.1 (S.D. Fla. 2011) (Jordan, J.). In other words, the "answer to the fraudulent joinder inquiry alone is not dispositive of a plaintiff's motives for purposes of post-removal joinder." *Id.* (citation omitted). That said, while "the fraudulent joinder doctrine is not directly applicable to the post-removal context, it can be a relevant factor." *Id.* (citation omitted).

When a removing defendant alleges fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). This burden is a "heavy one." *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Indeed, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. "If there is even a ***possibility*** that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983) (emphasis added).

## ANALYSIS

All four of the *Hensgens* factors weigh strongly in favor of allowing the Plaintiff to amend her Complaint here.

### A. The Purpose of the Amendment

*First*, on these facts, there is no (plausible) indication that the "purpose of the amendment is to defeat federal jurisdiction." To the contrary, in her Motion, the Plaintiff argues convincingly that her decision to drop the non-diverse Defendant (Pittsburgh-Florida) from the state-court case was animated, at least in large part, by *her lawyer's* legal error. *See generally* Mot. And the Plaintiff's position makes sense. After all, while the Plaintiff may have doubted the viability of her claim against Pittsburgh-Florida, it is undisputed that the Plaintiff always knew Pittsburgh-Florida's *citizenship*. In other words, the Plaintiff dropped Pittsburgh-Florida from the state-court case, even though doing so rendered the state-court parties completely diverse.

Against this backdrop, the Defendants claim that the Plaintiff's proposed emendation is "fraudulent." *See generally* Response. They even attach to their Response an Affidavit from Frankie Garland—an employee of the Pittsburgh Pirates—who swears that "Birkbeck has no agency or employee relationship" with either of the non-diverse Defendants. Garland Aff. ¶ 4. But a defendant may not defeat an (otherwise) properly-pled claim by simply disagreeing with the Plaintiff's account of the facts. We have trials for that. At the pleading stage, a plaintiff need only "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). And the Plaintiff's allegation that Birkbeck "is part of a joint venture" between the diverse and non-diverse Defendants, *see* Mot. at 1, is not at all implausible. Birkbeck, after all, was acting as a scout for the Pittsburgh Pirates *in Florida* when he crashed into the Plaintiff's car. *See* Resp. at 4. It is thus certainly "plausible" that the Pirates' *Florida* subsidiary and its *Florida* scouting arm were

5

somehow involved in his *Florida* scouting work. *Cf. Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor . . . ."). Because there is—at the very least—a "***possibility*** that a state court would find that the complaint states a cause of action against any one of the resident defendants," this Court "must find that joinder was proper and remand the case to state court." *Coker*, 709 F.2d at 1440–41 (emphasis added).

In either event, the Defendants' position is belied by the timing of their fraudulent joinder arguments. The Defendants, it goes without saying, had every opportunity to challenge the Plaintiff's claims against Pittsburgh-Florida in state court. But, rather than move to dismiss Pittsburgh-Florida from the state-court case, the Defendants elected to *answer* the Plaintiff's Complaint. *See* State Court Answer [ECF No. 1-2]. Indeed, even in the defenses they proffered in their Answer, the Defendants never suggested, as they do now, that the Plaintiff had failed to state a viable claim against Pittsburgh-Florida. *See id.* at 2–3. The Defendants' objection, then, seems rooted—not in any deficiency in the Plaintiff's proposed amendments—but in their desire to litigate this case in federal, rather than in state, court. But the "plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Crowe*, 113 F.3d at 1538 (citing *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)).

The Defendants also (notably) failed to remove the case *before* the Plaintiff dismissed Pittsburgh-Florida from the Complaint. In their Notice of Removal, they justified their failure to remove the case within 30 days of being served with the Complaint—as they were required to do under 28 U.S.C. § 1446(b)(2)(B)—by arguing that the case did not become removable until Pittsburgh-Florida was dismissed, *see* Notice of Removal at 3–4; Removal Report [ECF No. 15]

6

at 3. But, in saying so, the Defendants impliedly recognized that there was nothing fraudulent about Pittsburgh-Florida's inclusion in the original Complaint. Otherwise—if, that is, Pittsburgh-Florida's inclusion had been fraudulent from the beginning—nothing would have prevented the Defendants from removing the case within 30 days. And so, if Pittsburgh-Florida's joinder in the original Complaint really had been fraudulent, then the Defendants' removal would have been untimely. *See* 28 U.S.C. § 1446(b)(2)(B). The Defendants cannot have their cake and eat it too. They cannot, in justifying the timeliness of their removal, rely on Pittsburgh-Florida's (proper) presence in the case, *see* Notice of Removal ¶ 13, and then—when the timeliness of their removal is no longer at issue—challenge the propriety of Pittsburgh-Florida's joinder, *see generally* Resp.

### B. Delay

*Second*, the Plaintiff "has not been dilatory in asking for amendment." This is not a case where the Plaintiff—caught off-guard by the removal—asks for an amendment she had not thought of before. *Cf. Ibis Villas*, 799 F. Supp. 2d at 1335 (noting that the plaintiff "cannot reasonably argue that it did not know or should not have known of its potential claims against the brokers and/or agents at the time it filed the complaint or before the case was removed"). To the contrary, the case's procedural history suggests that the Plaintiff initially brought a facially-viable claim against a non-diverse Defendant, that she then dropped that claim because of a legal error, and that she has now (timely) asked the Court for leave to rejoin that same claim against that very same Defendant here. This factor, then, likewise tilts in the Plaintiff's favor.

### C. Prejudice

*Third*, the Plaintiff will be severely prejudiced if the Court denies her leave to amend. In *Ibis Villas*, Judge Jordan weighed this factor against the plaintiff because its claims against the non-diverse brokers would "not accrue until [the plaintiff's] proceedings against the insurers have

7

concluded." *Id.* at 1336–37. That is simply not the case here. The Defendants never suggest—nor can they—that Tan's claims against the non-diverse Defendants would not begin to accrue until this Court resolves her case against the current Defendants. To the contrary, it seems clear that, if the Court were to deny her request for leave, she would have two choices (both bad): either forego her claims against the non-diverse Defendants or else sue them separately in state court. In the latter scenario, she would have to prosecute—and the civil justice system would have to bear— two identical actions, one in state court against the non-diverse Defendants and the second here against the current Defendants, at the same time. That tremendously unnecessary (and inefficient) duplication of effort might well result in inconsistent rulings—on everything from discovery disputes to dispositive motions—and incongruous verdicts. This factor, in sum, weighs heavily in favor of remand.

### D. Other Factors

*Fourth*, neither party has identified any "other factors" that might tilt the scales one way or the other. Nevertheless, the Court feels compelled to say that it would be unjust in the extreme to penalize Ms. Tan for her attorney's error—especially where, as noted, the Defendants had several (prior) opportunities to challenge her allegations against Pittsburgh-Florida and chose not to do so.

\*\*\*

The Plaintiff, in short, shall be permitted to amend her complaint. And, because there is no dispute that the proposed amendment would destroy diversity, the case must be remanded for lack of subject matter jurisdiction. *See Alvarez*, 508 F.3d at 641.

Being fully advised, the Court hereby

**ORDERS AND ADJUDGES** that the Motion to Amend [ECF No. 8] is **GRANTED** as follows:

1. The Proposed Second Amended Complaint [ECF No. 8-6] is hereby deemed **FILED**.

2. The Clerk of Court is directed to **REMAND** this case to the 15th Judicial Circuit in and for Palm Beach County, Florida.

3. The Clerk of Court shall **CLOSE** this case. Any pending motions are **DENIED AS MOOT**. All pending deadlines and hearings are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 8th day of July 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record